JUDGE SULLIVAN

08 CV 7349

RECEIVED
AUG 19 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA CHIN, on behalf of herself and all others similarly situated, | Civil Action No. CV-08-_____ |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| vs. | |
| RCN CORPORATION, | |
| Defendant. | |

Plaintiff Sabrina Chin ("Plaintiff"), on behalf of herself and all others similarly situated, by her undersigned attorneys, alleges as follows:

1. This is a class action brought by Plaintiff, on behalf of herself and all other similarly situated customers, against RCN Corporation ("RCN" or "Defendant") for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"); violations of Virginia's Consumer Protection Act, Va. Code § 59.1, *et seq.*; fraud; breach of contract; breach of the implied covenant of good faith and fair dealing; and, unjust enrichment, seeking redress for the illegal acts of Defendant, for declaratory and injunctive relief to end the improper practices of Defendant and to prevent further damages to the class and future computer users.

## NATURE OF THE CASE

2. Defendant promises its subscribers "fast and uncapped" Internet service at "unrivaled speeds". *See* http://www.rcn.com/internet/highspeed/optimization.php (last visited August 19, 2008). Defendant, however, does not provide such fast and uncapped access or service. Instead, Defendant intentionally interferes with its subscribers' connections to the Internet by delaying and/or blocking altogether certain communications.

3. Specifically, Defendant secretly interferes with RCN subscribers' ability to use the Internet by delaying, or preventing altogether, subscribers' Internet use and transmissions (a practice commonly referred to as "throttling"). Without the subscribers' knowledge or consent, Defendant is able to delay or block altogether the free flow of online information otherwise accessible to its subscribers.

4. Defendant has received a great deal of criticism for this practice. For example, in December 2006, *Wired* magazine revealed that RCN was interfering and delaying Internet access. *See* http:// blog.wired.com/ monkeybites/ 2006/12/ is_your_isp_blo.html (last visited August 13, 2008). Likewise, in July 2008, *PCWorld* magazine revealed that RCN was throttling Internet access. In fact, a RCN technician admitted to a complaining customer that RCN was throttling Internet access, only to have RCN's press department later recant the admission when the complainant revealed that he was a reporter. *See* http://www.pcworld.com/businesscenter/article/145786/elude_your_isps_bittorrent_blockade.html (last visited August 19, 2008).

5. One of the motivations for Defendant to engage in this misconduct is to cause consumers to pay extra, unnecessary monthly fees to Defendant. For example, much of the Internet transmissions Defendant delays or prevents are for the sharing of free online files that contain movies, television shows, games, music and similar content. Defendant, however, offers "uncapped" service for access to these movies and television shows if the consumer pays Defendant $14.95 per month in addition to the amount the consumer is already paying Defendant for Internet access.

6. On August 1, 2008, the Federal Communications Commission ("FCC") sanctioned one of RCN's Internet provider competitors, Comcast, for the same type of illegal

throttling of Internet traffic that is at issue here. The FCC issued a cease-and-desist order and required Comcast to disclose to its subscribers how it plans to manage traffic.

7. The FCC's crack-down on Internet throttling received praise from Internet search engines such as Google, whose Washington telecom and media counsel stated, "[w]e believe that such a commission order will provide useful clarity on what types of practices are acceptable under the agency's Internet freedom principles, and help ensure that today's broadband networks remain open platforms to the Internet . . . ***No broadband company, including Comcast, should be allowed to employ traffic management practices that harm the interests of consumers, and the Internet itself, by failing to deliver fair access to all of the Net's resources.***" See http://www.pcmag.com/article2/ 0,1895,2325455,00.asp (last visited August 13, 2008) (emphasis added).

8. This class action complaint seeks to end Defendant's unauthorized practices and seeks recovery of fees paid by subscribers for services that they did not receive or did not need.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332 and 1367. Diversity jurisdiction exists pursuant to 28 U.S.C. §1332(d), because, as discussed below, Plaintiff and Defendant are citizens of different states and the amount in controversy is in excess of $5,000,000.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendant conducts substantial business in this District.

11. In connection with the acts alleged in this complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce.

## PARTIES

12.    Plaintiff Sabrina Chin is a RCN Internet subscriber who is a citizen of New York. During the Class Period (defined below), Plaintiff was a regular paying subscriber for RCN's Internet service. Defendant's representations and contract never disclosed to Plaintiff that her Internet communications would in any way be interfered with or delayed by the Defendant without her permission. Nor was Plaintiff informed that Defendant would discriminate against any of her attempts to share files with others on the Internet. If Defendant had disclosed that its high speed Internet service did not, in fact, offer "fast and uncapped" service, Plaintiff would have not paid for said services.

13.    Defendant RCN is a Delaware corporation headquartered in Herndon, Virginia. Thus, for diversity jurisdiction purposes, it is a citizen of Delaware and Virginia. RCN has approximately 500,000 domestic customers.

## SUBSTANTIVE ALLEGATIONS

14.    Defendant has a registered trademark for the slogan "Connect to something more." Defendant promises its subscribers that it "offer[s] you the fastest residential cable modem speed bar none." Defendant further represents to its subscribers that its "unrivalled speeds far exceed any other Internet provider in your area such as Verizon, SBC, Service Electric, Comcast or Time Warner." It ultimately claims that it built its network "so you can enjoy the Internet the way it was intended to be—fast and uncapped." *See* http://www.rcn.com/internet/highspeed/optimization.php (last visited August 19, 2008). Defendant's representations, however, are all contrary to Defendant's hidden practice of severely limiting the speed of certain Internet communications, such as BitTorrent peer-to-peer (P2P) file-sharing communications and other protocols by which content is communicated online. Furthermore, nothing in the subscribers' terms of agreement with RCN revealed that Defendant

throttles traffic. Accordingly, Defendant has broken and continues to break its promise of "fast and uncapped" access to the Internet.

### Methods of Interference with Uncapped Access by Forging Traffic

15. Information on the Internet is often exchanged between computers using a standard protocol called Transmission Control Protocol ("TCP"). When a computer believes it got a "wrong number" or received a "busy signal," it sends a TCP message known as a "reset" packet. TCP reset packets generally cause inbound Internet connections to close down, or cause them to otherwise not be received by the subscriber.

16. Peer-to-peer transmissions account for roughly half of all traffic on the Internet, enabling computers to transfer all types of data across the Internet. BitTorrent, a rapidly growing peer-to-peer file sharing application, is able to assemble fairly large files for download relatively quickly by tapping into dozens, or even hundreds, of other participating computers. A rapidly growing number of companies are using BitTorrent as a legitimate protocol for exchanging data. For instance, "Vuze" is a company that uses BitTorrent as a distribution mechanism to sell downloads from a huge library of licensed content.

17. Upon information and belief, Defendant uses the stealth technology described above such that messages invisible to Defendant's internet subscribers are seemingly being sent or received by the subscriber's computer that tells the other computer it intends to connect with to stop communicating. Defendant is in effect impersonating parties as the respective computers are attempting to communicate an exchange of data. In other words, RCN is behaving like a telephone operator breaking into a conversation, impersonating each speaker in the voice of the other to communicate: "This call is over, I'm hanging up."

### Defendant Profits by Throttling Internet Traffic

18.  Defendant's misrepresentations, acts of concealment, failures to disclose and breaches of its agreements with its subscribers were knowing and intentional, and made for the purpose of deceiving Plaintiff and the members of the Class to maximize Defendant's gain.

19.  Defendant's unauthorized interference with its subscribers' online experience results in the subscribers' loss of use with regards to their computers and high-speed Internet service.

20.  Moreover, many of the Internet services that Defendant throttles are free to its subscribers. Defendant, however, charges subscribers an additional $14.95, over and above the monthly charge for Internet access, for equivalents of these services. Defendant is therefore motivated to throttle consumers' Internet service in order to force these consumers to pay Defendant an additional $14.95 per month to be able to access the equivalent services, which otherwise should be free.

21.  As a result of Defendant's deceptive, fraudulent and misleading practices, advertising, marketing and sales of its high-speed Internet service, Defendant is enriched at the expense of its subscribers. Defendant is not only profiting from false promises of accessibility, but it is unfairly profiting off this conduct by charging additional amounts for Internet content that otherwise would be free if Defendant did not throttle access to it. Furthermore, Defendant's active interference with its high-speed Internet subscribers' file-sharing communications is beyond standard network management by an Internet service provider, and runs counter to the tradition and public policy of treating all types of Internet traffic neutrally and equally. By impairing use of peer-to-peer communication protocols while permitting the unimpaired use of other protocols, Defendant unfairly discriminates against certain forms of Internet communications by its subscribers and their ability to exchange data. It is thus against equity

and good conscience to permit Defendant to retain the ill-gotten benefits it receives from its subscribers who are promised "fast and uncapped" high-speed access to the Internet.

## CLASS ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all persons in the United States who, within the five-year period preceding the filing of Plaintiff's complaint through the date notice is sent to the class (the "Class Period"), subscribed to RCN high-speed Internet service (the "Class"). Excluded from the Class are Defendant's employees, officers, directors, agents, representatives and their family members.

23. Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant. Plaintiff, however, believes that the Class encompasses at least tens of thousands of individuals who are geographically dispersed throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

24. All members of the Class have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to the Class which predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

- The nature, scope and operation of Defendant's wrongful practices;
- Whether Defendant intentionally accesses its subscribers computers;
- Whether Defendant's practices violated the CFAA;
- Whether Defendant's practices violate Virginia's Consumer Protection Act;
- Whether Defendant's practices breached its contract with its subscribers;

7

- Whether Defendant's practices breached the implied covenant of good faith and fair dealing in its contracts with its subscribers;

- Whether Defendant has engaged in fraud, deceit and misrepresentation;

- Whether Defendant was unjustly enriched;

- Whether the Court can should enter declaratory and injunctive relief; and

- The proper measure of damages.

25. Plaintiff's claims are typical of the claims of the Class because Plaintiff and all the other members of the Class purchased high-speed Internet service from RCN and sustained damages due to Defendant's improper conduct.

26. The individual named Plaintiff will fairly and adequately represent the interests of the Class. She is committed to the vigorous prosecution of the Class's claims and has retained attorneys who are qualified to pursue this litigation and have experience in Class actions. Plaintiff has no interests which conflict with those of the Class.

27. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

28. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the Class.

29.  Defendant has acted or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive relief appropriate.

30.  The questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

31.  A Class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

- Individual claims by the Class members are impractical as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake, and thus, as a result, individual members of the Class have no interest in prosecuting and controlling separate actions;
- It is desirable to concentrate litigation of the claims herein in this forum; and
- The proposed Class action is manageable.

## PLAINTIFF'S CLAIMS

### COUNT I

### VIOLATION OF COMPUTER FRAUD & ABUSE ACT, 18 U.S.C. § 1030

32.  Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

33.  As set forth above, Defendant is violating the CFAA by intentionally accessing its subscribers' computers without authorization.

34.  By engaging in such practices, Defendant causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols.

35. The aggregate damage caused to subscribers of Defendant's Internet service during the past year is at least the statutory requirement of $5,000.00.

36. Accordingly, Defendant's intentional interference with its subscribers' connection to the Internet, and failure to provide uncapped access as promised, violates the CFAA and Plaintiff and the Class are entitled to economic damages subject to proof at trial.

## COUNT II

### VIOLATION OF VIRGINIA'S CONSUMERS PROTECTION ACT, VIRGINIA CODE § 59.1 ET SEQ. ON BEHALF OF THE CLASS

37. Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

38. This cause of action is brought pursuant to Virginia's Consumer Protection Act, Virginia Code § 59.1 et seq. (the "Act").

39. Defendant's actions, representations and conduct have violated, and continue to violate the Act, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

40. Plaintiff and other Class members engaged in "consumer transactions" as that term is defined by the Virginia Code § 59.1-198.

41. The Internet services that Plaintiff (and other similarly situated Class members) purchased from Defendant were "goods" and/or "services" within the meaning of Virginia Code § 59.1-198.

42. By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, Virginia Code §59.1-200(5). Specifically, in violation of Virginia Code §59.1-200(5), Defendant misrepresented that its goods

10

or services had certain quantities, characteristics, ingredients, uses, or benefits that they did not have.

43. By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, Virginia Code §59.1-200(6). Specifically, in violation of Virginia Code §59.1-200(6), Defendant misrepresented that its goods or services were of a particular standard, quality, grade, style, or model when they were not.

44. By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, Virginia Code §59.1-200(14). Specifically, in violation of Virginia Code §59.1-200(14), Defendant's act and conduct constitute deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

45. Pursuant to Virginia Code §59.1-204(A), Plaintiff, on behalf of herself and similarly situated Class members, seeks statutory damages in an amount of $500 per person. Plaintiff will also seek to have this amount increased to $1,000 per person at trial upon a showing of Defendant's willful violation of the Act.

46. Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to Virginia Code §59.1-204(B).

47. Plaintiff further requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to the Act. If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff, Class members and other members of the general public will continue to suffer harm.

## COUNT III

## BREACH OF CONTRACT

48. Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

49. Plaintiff and Class members entered into a written contract with Defendant to pay monthly fees in exchange for its uncapped high-speed Internet service.

50. Plaintiff and Class members performed all of their obligations under the contract by paying their monthly subscription fees.

51. Defendant unjustifiably breached the contract by intentionally interfering with Plaintiffs and Class members' access to and use of Defendant's Internet service. As a direct and proximate result of this breach, Plaintiff and Class members have suffered, and continue to suffer, damages in an amount that will be proven at trial.

## COUNT IV

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52. Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

53. Plaintiff and Class members entered into contracts with Defendant for the provision of Internet service based upon Defendant's uniform representations regarding the quality of its service, namely that it would provide "fast and uncapped" Internet service.

54. Plaintiff and Class members performed all of their obligations under the contracts by paying the monthly fees for their Internet service.

55. Defendant breached the implied covenant of good faith and fair dealing in its contracts with Plaintiff and Class members by knowingly failing to provide Plaintiff and Class

members with the service that they desired, paid consideration for and thought they were receiving.

56. As a direct and proximate result of the breaches set forth herein, Plaintiff and Class members have suffered, and continue to suffer, damages in an amount that will be proven at trial.

## COUNT V

### DECEIT, FRAUD AND/OR MISREPRESENTATION

57. Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

58. Since the beginning of the Class Period, Defendant has engaged, and continues to engage, in fraudulent, false and/or deceptive practices in order to induce customers to sign up for its Internet service and to pay extra for a premium version of that Internet service by misrepresenting the quality of its Internet service and failing to disclose, despite a duty to do so, that it blocked or otherwise interfered with Internet service.

59. These aforementioned fraudulent, false and/or deceptive practices concerned material facts that were essential to the analysis undertaken by Plaintiff and Class members when signing up for Defendant's Internet service.

60. Plaintiff and Class members would have acted differently had they not been misled or received full disclosure that Defendant did not provide "fast and uncapped" high-speed Internet service.

61. By and through such fraud and deceit, Defendant intended to induce Plaintiff and Class members to alter their positions to their detriment.

62. Plaintiff and Class members justifiably and reasonably relied on Defendant's omissions and misrepresentations, and, as such, were damaged by the Defendant.

63. Defendant acted with intent to defraud or with reckless disregard for the rights of Plaintiff and Class members

64. As a direct and proximate result of Defendant's omissions and misrepresentations, Plaintiff and Class member have suffered damages including paying for a high-speed Internet service they did not receive.

## COUNT VI

## UNJUST ENRICHMENT

65. Plaintiff and Class members incorporate and reallege the above paragraphs of this Complaint as if set forth herein.

66. Defendant's deceptive scheme unjustly enriched Defendant, to the detriment of the Class, by causing Defendant to receive payments for a high-speed Internet service that it did not provide.

67. Plaintiff and Class members have been injured by paying for a high-speed Internet service that they did not receive.

68. As a result of Defendant's deceptive, fraudulent and misleading practices, advertising, marketing and sales of its high speed Internet service, Defendant has been, and continues to be, enriched at the expense of its subscribers. Defendant's active interference with its high-speed Internet subscribers' file-sharing communications is beyond standard network management, and runs counter to the tradition and public policy of treating all types of Internet traffic equally. It is thus against equity and good conscience to permit Defendant to retain the ill-gotten benefits it has received, and continues to receive, from Plaintiff and Class members who are promised uncapped, high-speed access to the Internet, without restitution to Plaintiff and Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating her counsel as counsel for the Class;

(b) Awarding Plaintiff and Class members compensatory damages in an amount in excess of $5,000,000;

(c) Awarding Plaintiff and Class members statutory damages as permitted by law;

(d) Awarding Plaintiff and Class members punitive damages as permitted by law;

(e) Ordering that an accounting be made of Defendant of its wrongfully obtained payments and profits;

(f) Ordering that restitution be made to Plaintiff and Class members for Defendant's unjust enrichment;

(g) Ordering such injunctive relief as the Court may deem just and proper to prevent Defendant from engaging in future fraudulent practices;

(h) Awarding costs of this action, including reasonable attorneys fees and expenses; and

(i) Any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

DATED: August 19, 2008

Respectfully submitted,

**REESE RICHMAN LLP**

By: _____
Michael R. Reese
Kim E. Richman
Belinda Williams
230 Park Avenue, 10th Floor
New York, New York 10169
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
e-mail: michael@reeserichman.com
kim@reeserichman.com
Belinda@reeserichman.com

- and -

**DREIER LLP**

By: _____
Lee A. Weiss
Rebecca Tingey
499 Park Avenue
New York, New York 10022
Telephone: (212) 328-6100
Facsimile: (212) 328-6101
e-mail: lweiss@dreierllp.com
rtingey@dreierllp.com

*Counsel for Plaintiff*