**REESE RICHMAN LLP**
Michael R. Reese
michael@reeserichman.com
Kim E. Richman
kim@reeserichman.com
Belinda L. Williams
belinda@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

***Counsel for Plaintiff and the Proposed Class***

**BINGHAM McCUTCHEN LLP**
Peter C. Neger
peter.neger@bingham.com
Derek Care
derek.care@bingham.com
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7226
Facsimile: (212) 702-3616

***Counsel for Defendant RCN Corporation***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SABRINA CHIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RCN CORPORATION,<br><br>Defendant. | ) | Civil Action No. 1:08-CV-7349 RJS<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

THIS CLASS ACTION SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into as of the 31st day of July, 2009, by and among RCN Corporation, a Delaware corporation, located in Herndon, Virginia ("RCN" or "Defendant"), and Sabrina Chin ("Chin," the "Plaintiff," or the "Class Representative") (collectively, the "Parties"), on behalf of herself and all others similarly situated.

**1. <u>RECITALS</u>**

**1.1** On or about August 19, 2008, Chin commenced an action (the "Litigation") in the United States District Court for the Southern District of New York captioned *Chin v. RCN Corporation*, Civil Action No. 1:08-CV-7349 (RJS), by filing a complaint (the "Complaint").

**1.2** The Complaint asserts, generally, that RCN misrepresented the quality of the broadband Internet service it provided to subscribers from August 19, 2003 to the present due to RCN's inadequately disclosed network management practices. The Complaint asserts causes of action for violation of the Computer Abuse and Fraud Act, 18 U.S.C. § 1030, *et seq.*; Virginia's Consumer Protection Act, Va. Code § 59.1, *et seq.*; fraud; breach of contract; breach of the implied covenant of good faith and fair dealing; and unjust enrichment.

**1.3** RCN denies any and all liability with respect to any and all facts and claims alleged in the Complaint.

**1.4** On November 21, 2008, Defendant answered the Complaint, denying all of the material allegations of the Complaint and asserting affirmative defenses.

**1.5** On May 14, 2009, the Parties, their experts and the Parties' respective counsel met before the Hon. Richard J. Sullivan for a settlement conference.

**1.6** On June 19, 2009, after negotiations between the Parties that required the

Court's involvement as stated above, the Parties agreed to a settlement term sheet. The Parties informed the Court of the agreement via letter on June 19, 2009.

**1.7** This matter has not been certified as a class action. Subject to the approval of the Court, the Parties agree that a class may be conditionally certified for purposes of this settlement.

**1.8** Class Counsel (as defined in Section 2.1) are familiar with the claims being settled and the defenses asserted. Class Counsel have had the opportunity to conduct, and have conducted, discovery relating to the claims alleged in the Complaint, including propounding discovery requests and interrogatories, inspecting and reviewing documents produced by RCN, and conducting examinations of various RCN employees.

**1.9** RCN's Counsel (as defined in Section 2.11) are familiar with the claims being settled and the defenses asserted. RCN's Counsel have had the opportunity to conduct, and have conducted, discovery relating to the claims alleged in the Complaint, including propounding discovery requests and interrogatories, and examining Plaintiff's expert.

**1.10** Plaintiff Sabrina Chin and Class Counsel believe that the Complaint has merit. RCN and RCN's Counsel believe that the claims asserted are without merit and that RCN has complete, valid defenses thereto. The terms of this Settlement Agreement were reached after extensive, bona fide arm's length negotiations among counsel for the Parties, including a settlement conference before the Honorable Richard J. Sullivan, United States District Judge for the Southern District of New York.

**1.11** The Parties and their counsel acknowledge the uncertain outcome and the risk of further litigation, as well as the difficulties, delays and costs inherent in such litigation. Plaintiff and Class Counsel have also taken into account the substantial

benefits conferred on Plaintiff and the Settlement Class (as defined in Section 2.8) by the settlement set forth in this Settlement Agreement, and have determined that the settlement set forth in this Settlement Agreement is fair, reasonable and in the best interests of Plaintiff and the Settlement Class. This settlement shall not be construed or deemed to be a concession by Plaintiff of any infirmity in the claims asserted in the Complaint.

**1.12** RCN denies the claims and contentions alleged against it in the Litigation. Nevertheless, RCN wants to avoid the substantial burden, expense, inconvenience, distraction and interference with its ongoing business operations of continuing to litigate the Litigation through trial and appeals. Therefore, RCN has determined that settlement on the terms set forth herein is in its best interests.

**NOW, THEREFORE,** in consideration of the mutual covenants and other consideration described below, and subject to approval of the Court, the parties, by and through their respective undersigned counsel, agree as follows:

## 2. DEFINITIONS

**2.1** "Class Counsel" means Michael R. Reese and Kim E. Richman, Reese Richman LLP, 875 Avenue of the Americas, 18th Floor, New York, New York 10001.

**2.2** "Class Notice" means the legal notice of the proposed settlement terms, as approved by RCN's Counsel, Class Counsel and the Court, to be provided to potential members of the Settlement Class pursuant to Section 8 below. The Class Notice shall be substantially in the form attached hereto as Exhibit A.

**2.3** "Class Representative," "Plaintiff" or "Chin" means Sabrina Chin, a resident of New York and, as applicable, her agents, servants, assignees, heirs, successors and/or other transferees or representatives.

**2.4** "Court" means the United States District Court for the Southern District of New York.

**2.5** "Effective Date" means the date upon which the time to appeal or otherwise seek review of the event described in Section 2.6 below has expired or, appeals having been taken, the date upon which said appeals have been finally resolved without the possibility of further appeal.

**2.6** "Final Approval" of this Settlement Agreement means the last date by which Judgment (as defined in Section 3.0 below) is entered in the Litigation approving this Settlement Agreement.

**2.7** "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement, preliminarily certifying the Settlement Class and approving the Class Notice, substantially in the form attached hereto as Exhibit B.

**2.8** "Settlement Class" shall mean the class of persons certified by the Court for settlement purposes only and consisting of all persons in the United States who, between August 19, 2003 and the date this Settlement Agreement is filed with the Court, subscribed for RCN's broadband Internet service. Excluded from the Settlement Class are persons who will have timely and validly opted out of the Settlement Class pursuant to Section 6 below.

**2.9** "RCN" means RCN Corporation, a Delaware corporation with its principal place of business in Herndon, Virginia, its franchisees, predecessors, subsidiaries, affiliates, officers, directors, partners, employees, agents, servants, assignees, licensees (unless such licensee is a member of the Settlement Class, as defined in Section 2.8 above), successors and/or other transferees or representatives.

**2.10** "RCN's Counsel" means Peter C. Neger and Derek Care, Bingham

McCutchen LLP, 399 Park Avenue, New York, New York 10022; and Paul Eskildsen, Vice President, RCN Corporation, 196 Van Buren Street, Suite 300, Herndon, Virginia 20170.

**2.11** "P2P" means peer-to-peer Internet applications that rely on the cumulative bandwidth of participants to transfer information.

**2.12** "P2P Network Management Practices" means any and all network management practices that specifically affect or target peer-to-peer Internet traffic.

**2.13** "P2P Cessation Period" means the period of time agreed to below in Section 3.2 during which RCN will cease and desist use of any and all P2P Network Management Practices.

**2.14** "Non-P2P Network Management Practices" means any and all congestion network management practices that do not specifically target P2P.

**2.15** "Non-P2P Cessation Period" means the period of time agreed to below in Section 3.2 during which RCN confirms it has not used, and agrees not to use, Non-P2P Network Management Practices.

**2.16** "Network Management Practices" means, collectively, the P2P Network Management Practices and Non-P2P Network Management Practices defined above in Sections 2.12 and 2.14.

**2.17** "New Network Management Practices" means any and all congestion network management practices implemented after expiration of the Non-P2P Cessation Period.

**2.18** "New Network Management Practice Notice" means the notice to be given to RCN broadband Internet subscribers as described below in Section 3.5.

**2.19** "Parties" means Plaintiff Chin and Defendant RCN Corporation.

## 3. THE SETTLEMENT

The Parties agree to do all things necessary and appropriate to obtain Final Approval of this Settlement Agreement and of a final judgment (the "Judgment"), approving the settlement terms contained in this Settlement Agreement as being fair, reasonable and adequate as to all members of the Settlement Class, and dismissing the Litigation, with prejudice.

**3.1** RCN agrees that in consideration of the Releases set forth below in Section 5, RCN will provide the benefits described in this Section 3.

### 3.2 CESSATION OF NETWORK MANAGEMENT PRACTICES

RCN agrees to cease and desist use of all P2P Network Management Practices for a period of eighteen months starting on May 1, 2009. RCN hereby confirms that May 1, 2009 is the date that RCN ceased P2P Network Management Practices and that RCN has not reengaged in P2P Network Management Practices since May 1, 2009. RCN also agrees to not engage in any Non-P2P Network Management Practices for a period of eighteen months starting on April 1, 2008. RCN hereby confirms that it has not engaged in any Non-P2P Network Management Practices from April 1, 2008 though the date of this Settlement Agreement.

### 3.3 CERTIFICATION AND INDEPENDENT MONITOR OF CESSATION OF NETWORK MANAGEMENT PRACTICES

**A.** RCN agrees that six months, twelve months and eighteen months after the commencement of the P2P Cessation Period, it will provide Class Counsel with a written certification from an appropriate RCN officer or executive stating that RCN has ceased all P2P Network Management Practices and has not resumed the use of any P2P Network Management Practices during the preceding six months.

**B.** RCN hereby certifies it has not used Network Management Practices from the period May 1, 2009 to the date of this Settlement Agreement.

**C.** RCN shall subject itself to and pay up to $25,000 for an independent monitor to assure compliance with Section 3.2 above. The Independent Monitor shall be Peter Eckersley. The Independent Monitor shall make arrangements to establish RCN subscriber accounts as appropriate to conduct the testing from remote locations. In order to maintain testing integrity, the identity and location of the RCN subscriber accounts shall not be disclosed to RCN.

**D.** The monitoring to be performed by the Independent Monitor shall be limited to confirming RCN's cessation of all P2P Network Management Practices and Non-P2P Network Management Practices during their respective Cessation Periods and shall not involve testing or monitoring of other matters not related to RCN's obligations pursuant to this settlement.

**E.** If the Independent Monitor's testing indicates a breach of the settlement, counsel for the Parties shall be alerted to the purported breach by the Independent Monitor. The Independent Monitor shall provide counsel for both Parties, and RCN's technical personnel, with copies of and/or access to all test results and data collected in connection with any preliminary conclusion regarding a possible violation of settlement obligations, and shall provide such reasonable assistance to the Parties as necessary to enable them to understand and replicate the methodology, data and conclusions of the tests performed by him. RCN then shall have no less than forty-five (45) days to investigate the purported breach and explain or refute the claim of breach, or otherwise correct any inadvertent practices that arguably implicate the obligations in this settlement.

### 3.4 RESERVATION OF RIGHT TO IMPLEMENT NEW NETWORK MANAGEMENT PRACTICES

Subject to the notice, disclosure and opt-out provisions set forth in Section 3.5 below, RCN reserves the right to adopt and implement at any time after the Non-P2P Cessation Period, any New Network Management Practices which cause, or could potentially cause, a materially adverse impact to RCN broadband Internet subscribers, ***provided, however,*** that any New Network Management Practice adopted prior to the expiration of the P2P Cessation Period:

**A.** May not specifically target peer-to-peer network traffic; and

**B.** Must be protocol agnostic and non-discriminatory; and

**C.** May not materially decrease the bandwidth resources RCN provides to subscribers ***or*** RCN's subscribers' use in the aggregate during a given period of time; and

**D.** May only result in management of an individual RCN subscriber's traffic on the basis of that subscriber's aggregated traffic profile, which is understood to include the quantity, rate, timing, pattern and direction of traffic, but may not result in management of an individual RCN subscriber's traffic specifically on the basis of that traffic's origin, destination, content or protocol; and

**E.** May only adversely affect the bandwidth available to an individual subscriber during periods of high network congestion (*i.e.*, periods where a majority of RCN customers on a shared bandwidth resource would experience data transfer performance materially below the top speed provisioned for their service and which would include substantial numbers of dropped or significantly delayed packets); and

**F.** May not employ any technology which operates without

reasonable disclosure to all affected subscribers as set forth in Sections 3.5 below; and

G. Must be consistent with the rules and rulings of the Federal Communications Commission.

3.5 **NOTICE OF NEW NETWORK MANAGEMENT PRACTICES**

A. Except as provided in Section 3.6 below, RCN agrees that in the event it implements a New Network Management Practice prior to the end of the P2P Cessation Period, it will provide its broadband Internet subscribers with notice of RCN's adoption and implementation of the New Network Management Practice no less than sixty (60) days prior to the implementation of the New Network Management Practice and shall also give notice to Michael Reese of Reese Richman LLP and Peter Neger of Bingham McCutchen LLP. RCN agrees that any Notice to subscribers (and Reese and Neger) shall:

1. Identify and describe in easy to understand language written for the average consumer the New Network Management Practice and the potential that such practice could cause a material adverse impact to RCN broadband Internet subscribers; and

2. Contain links or references to technical descriptions of the New Network Management Practice which are reasonably detailed (and that RCN shall respond to good faith inquiries regarding such descriptions); and

3. State that RCN broadband Internet subscribers who object to RCN's implementation of the New Network Management Practice may opt-out of their subscription for RCN broadband Internet service, without penalty, within thirty (30) days after the New Network Management Practice Notice; and

4. Identify and describe the procedures by which RCN broadband Internet subscribers who object to RCN's implementation of a New Network Management Practice may opt-out of their subscription for RCN broadband Internet service, without penalty, thirty (30) days after New Network Management Notice; and

5. State that RCN may, at any time during the New Network Management Notice Period, decide not to implement the New Network Management Practice, and thereby terminate subscribers' rights to opt-out of their subscription for RCN broadband Internet service, without penalty, thirty (30) days after the New Network Management Notice Period.

**B.** RCN agrees that Notice shall be provided to RCN broadband Internet subscribers through reasonably prominent text in:

1. e-mail from RCN to the RCN broadband Internet subscriber's e-mail address, if any, provided by each RCN subscriber who allows for RCN to contact him/her via e-mail; and

2. RCN broadband Internet service billing statements, or in inserts provided with such billing statements; and

3. the RCN Customer Terms and Conditions page for RCN broadband Internet subscribers, to which there shall be a link on RCN's homepage.

**3.6 IMPLEMENTATION OF NETWORK MANAGEMENT PRACTICES IN CASE OF IMMIMENT HARM**

RCN may, as reasonably required, seek the consent of the Plaintiff and the Court to modify the terms of this settlement to permit RCN to implement New Network Management Practices not otherwise permissible pursuant to this settlement to address network security issues or to comply with applicable law and regulations, provided,

however, that if RCN reasonably believes that its network is subject to imminent harm (including, but not limited to, physical damage, viruses and fraud), RCN may take such immediate action as it deems appropriate to protect its network from such harm (without prior notice or application to the Plaintiff and the Court), so long as RCN provides notice of its action to the Plaintiff (by written notice to her counsel) and to the Court within 48 hours after taking action, and seeks the Plaintiff's and the Court's consent.

4. **SETTLEMENT CLASS**

**4.1** For the purposes of settlement and the proceedings contemplated herein, the Parties stipulate and agree that a nationwide Settlement Class should be conditionally certified. Class certification shall be for settlement purposes only and shall have no effect for any other purpose.

**4.2** As part of the settlement process, the Parties shall apply to the Court for entry of an order, substantially in the form of Exhibit B to this Settlement Agreement which, among other things, preliminarily certifies the Settlement Class in accordance with the definition set forth in Section 2.8 of this Settlement Agreement.

**4.3** The certification of the Settlement Class shall be binding only with respect to this Settlement Agreement. In the event that Final Approval does not occur for any reason, the Preliminary Approval Order, and all of its provisions, shall be vacated by its own terms, and the Litigation shall revert to its status as existed prior to the date of this Settlement Agreement.

5. **RELEASES**

**5.1** Each Settlement Class member shall grant RCN a General Release of all claims arising from their subscription to or use of RCN broadband Internet service and/or the advertising and marketing of that service as it relates to P2P and/or Non-P2P Network

Management Practices that are, or could have been, asserted in the Litigation relating to the claims alleged therein.

**5.2** Upon the Effective Date of this Settlement Agreement, Plaintiff and each member of the Settlement Class, and each of their respective successors, assigns, legatees, heirs and personal representatives, hereby release and forever discharge RCN and its affiliated entities, franchisees, predecessors, successors and assigns, and any of their present and former directors, officers, employees, shareholders, agents, partners, privities, representatives, attorneys, accountants and all persons acting by, through, under or in concert with them, or any of them, from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, to the extent that they arise out of or relate to any acts, omissions or other conduct that is or could have been alleged in the Litigation, including but not limited to the allegations that RCN misrepresented any aspect of its broadband Internet service as it relates to P2P or other congestion network management practices.

**5.3** Plaintiff fully understands that the facts upon which this Settlement Agreement is executed may hereafter be other than or different from the facts now believed by Plaintiff and Class Counsel to be true and nevertheless agrees that this Settlement Agreement shall remain effective notwithstanding any such difference in facts.

**6. OPTING OUT OF THE SETTLEMENT CLASS**

**6.1** Each Settlement Class member may, at his, her or its option, elect to opt-out of the settlement described herein. Counsel for the parties shall recommend to the Court that each such Settlement Class member must submit to the Court his/her request to opt out of the Settlement Class not later than twenty-one (21) calendar days prior to the hearing scheduled by the Court to consider final approval of the settlement (the "Settlement Hearing").

**6.2** Potential Settlement Class members shall have the right to be excluded from, or "opt out" of, the Settlement Class and this Settlement Agreement by sending a written request for exclusion by first-class mail to Class Counsel and RCN's Counsel. The written request for exclusion must be postmarked not later than twenty-one (21) calendar days prior to the Settlement Hearing and must set forth: (a) an identification of the action, *e.g.*, *Chin v. RCN Corporation*; (b) the potential Settlement Class member's full name, address, dates of subscription to RCN service and RCN account number; and (c) a statement that she or he wishes to be excluded from the Settlement Class.

**6.3** Any potential Settlement Class member who does not opt out may object to the proposed settlement or fee request by filing a written objection with the Court and mailing it to Class Counsel and to RCN's Counsel, by first-class mail postmarked not later than twenty-one (21) calendar days prior to the Settlement Hearing. The objection must set forth: (a) an identification of the action, *e.g.*, *Chin v. RCN Corporation*; (b) the potential Settlement Class member's full name, address, dates of subscription to RCN service and RCN account number; and (c) in clear and concise terms, the legal and factual arguments supporting the objection.

7. **ATTORNEYS' FEES AND EXPENSES**

**7.1** As of the date of this Settlement Agreement, the parties have not reached any agreement with respect to any application to the Court for an award of attorneys' fees and reimbursement of expenses to Class Counsel for the services rendered to the Settlement Class in this Litigation.

**7.2** Class Counsel reserves all of its rights to make an application to the Court for an award of attorneys' fees and reimbursement of expenses and RCN reserves all of its rights to respond to any such application.

**7.3** Subject to Court approval, RCN will agree not to oppose a single payment of three thousand dollars ($3,000.00) to the named plaintiff Sabrina Chin as reimbursement for her costs and expenses incurred in representing the class. This payment is separate and apart from the amount of attorneys' fees and reimbursement of expenses incurred by Class Counsel discussed above in Sections 7.1-7.2 and, if approved by the Court, will be made by RCN to Plaintiff within 10 days after the Effective Date.

8. **NOTICE TO CLASS OF PROPOSED SETTLEMENT**

**8.1** Within forty-five (45) days after entry of the Preliminary Approval Order, RCN shall, at its own expense, send the Class Notice to Class Members by e-mail, where e-mail addresses have been provided to RCN by the Class Members, and by first-class mail where no e-mail address has been provided. Also within forty-five (45) days after entry of the Preliminary Approval Order, a copy of this Settlement Agreement, the Preliminary Approval Order approving the settlement and the Class Notice shall be posted on RCN's website, or another website agreed to by the Parties, and the text of the Class Notice shall be available for downloading via the Internet.

**8.2** Nothing in this Section shall in any way abridge Class Counsel's right or ability to communicate with individual members of the Settlement Class regarding any aspect of the settlement.

**8.3** The Parties shall request that the Court schedule a hearing for Final Approval of this Settlement Agreement and the Judgment at least forty-five (45), but no more than sixty (60), days after delivery of the Class Notice to the members of the Settlement Class.

## 9. NO ADMISSION OF LIABILITY

**9.1** RCN denied, and continues to deny, that it committed or has threatened to commit any violations of law, breach of contract or wrongful conduct with respect to the Plaintiff or the Settlement Class. RCN is entering into this Settlement Agreement solely because it will eliminate the uncertainty, distraction, burden and expense of further litigation. The provisions contained in this Settlement Agreement shall not be deemed a presumption, concession or admission by RCN of any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Litigation, or any other actions or proceeding that has been, will be or could be brought, and shall not be interpreted, construed, deemed, invoked, offered or received in evidence or otherwise used by any person in the Litigation, or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as provided expressly herein.

**9.2** In the event that this Settlement Agreement is not approved by the Court substantially in the form submitted (or in a modified form mutually acceptable to the parties), or this Settlement Agreement is terminated or fails to become effective or final in accordance with its terms, the Plaintiff and RCN shall be restored to their respective positions in the Litigation as of the date hereof. In such event, the terms and provisions

of this Settlement Agreement shall have no further force and effect and shall not be used in the Litigation or in any other proceeding or for any purpose, and the Parties will jointly make an application requesting that the Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

**9.3** By entering into this Settlement Agreement, RCN is not consenting or agreeing to certification of the Settlement Class for any purpose other than to effectuate the settlement of the Litigation. The Parties agree that if this Settlement Agreement is not approved by the Court substantially in the form submitted (or in a modified form mutually acceptable to the parties), or if this Settlement Agreement is terminated or fails to become effective or final in accordance with its terms, the Litigation shall proceed as if no party had ever agreed to such settlement, without prejudice to the right of any party to take any and all action of any kind in the Litigation.

**10. <u>MISCELLANEOUS TERMS</u>**

**10.1** The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

**10.2** Cooperation to Complete Settlement – The Parties and their respective counsel agree to use their best efforts and to cooperate fully with one another (a) in seeking preliminary and final Court approval of this settlement; and (b) effectuating the full consummation of the settlement provided for herein.

**10.3** Authority to Execute – Each counsel or other person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so.

**10.4** Execution of Counterparts – This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Executed counterparts shall be deemed valid if delivered by mail, courier, electronically, or by facsimile.

**10.5** Binding Effect of Settlement – This Settlement Agreement shall be binding upon and inure to the benefit of the settling parties (including all Settlement Class members who do not opt out of the settlement described in this Settlement Agreement), their respective agents, attorneys, insurers, employees, representatives, officers, directors, partners, divisions, subsidiaries, affiliates, associates, assigns, heirs, successors in interest and shareholders and any trustee or other officer appointed in the event of a bankruptcy.

**10.6** The waiver by any party of a breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other breach of this Settlement Agreement.

**10.7** Entire Agreement – This Settlement Agreement and any exhibits attached to it constitute the entire agreement between the parties hereto and supersede any prior agreements or understandings whether oral, written, express or implied between the parties with respect to the settlement.

**10.8** Amendments – No amendment, change or modification of this Settlement Agreement or any part thereof shall be valid unless in writing, signed by all parties and their counsel and approved by the Court.

**10.9** Advice of Counsel – The parties to this Settlement Agreement each represent to the other that they have received independent legal advice from attorneys of their own choosing with respect to the advisability of making the settlement provided for

in this Settlement Agreement, and with respect to the advisability of executing this Settlement Agreement, that they have read this Settlement Agreement in its entirety and fully understand its contents, and that each is executing this Settlement Agreement as a free and voluntary act.

**10.10** Notice – Except as otherwise provided herein, all notices, requests, demands and other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered personally, by facsimile, by e-mail or by overnight mail, to the undersigned counsel for the parties at their respective addresses.

**10.11** Headings – The titles and captions contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Settlement Agreement or the intent of any of its provisions. This Settlement Agreement shall be construed without regard to its drafter, and shall be construed as though the parties participated equally in the drafting of this Settlement Agreement.

**10.12** The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement and the parties to this Settlement Agreement submit to the jurisdiction of the Court for those purposes.

IN WITNESS WHEREOF, RCN Corporation and Sabrina Chin, on behalf of herself and all others similarly situated, by their respective attorneys, have caused this Settlement Agreement to be executed as of the day and year first written above.

MICHAEL R. REESE
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and the Proposed Class*

PETER C. NEGER
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7226
Facsimile: (212) 702-3616

*Attorneys for Defendant*