**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
Belinda L. Williams
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email:  mreese@reeserichman.com
          krichman@reeserichman.com
          bwilliams@reeserichman.com

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA CHIN, on behalf of herself and all others similarly situated, ) | Civil Action No. 1:08-CV-7349 RJS |
| ) | |
| Plaintiff, ) | |
| vs. ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER: (1) CERTIFYING CLASS FOR PURPOSES OF FINAL APPROVAL OF SETTLEMENT; (2) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (3) GRANTING PAYMENT TO CLASS COUNSEL FOR THEIR FEES AND COSTS; AND (4) GRANTING PAYMENT OF INCENTIVE AWARD TO THE CLASS REPRESENTATIVE** |
| RCN CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.........................................................................................1

STATEMENT OF FACTS.............................................................................................3

1.    Pre-Suit Investigation, Allegations of the Complaint and Discovery.....................3

2.    Arm's Length Negotiation of the Settlement Terms and Preliminary
    Approval of the Settlement......................................................................5

3.    Terms of the Settlement.........................................................................6

4.    Procedural History of Arms' Length Fee Negotiations...........................................6

5.    Proper Notice Provided to the Class...........................................................7

ARGUMENT...............................................................................................................7

I.    THE STANDARD FOR FINAL APPROVAL OF A CLASS ACTION
    SETTLEMENT UNDER FEDERAL CIVIL PROCEDURE RULE 23................7

A.    The Complexity, Expense, and Likely Duration of the Litigation.........................8

B.    Reaction of the Class to the Settlement...................................................9

1.    The Objectors Represented by The Nolan Law Firm Have Failed to
    Allege Standing and Their Objections Lack Merit................................................10

2.    Objector Lyon Has Failed to Allege Standing and His Objections Lack Merit....11

3.    Objector Lavery Has Failed to Allege Standing and His Objection Lacks Merit.13

C.    Stage of the Proceedings and the Amount of Discovery Completed....................14

D.    The Risks of Establishing Liability..........................................................14

E.    The Risks of Establishing Damages..........................................................15

F.    Risks of Maintaining the Class Action Through the Trial.....................................15

G.    The Ability of the Defendant to Withstand a Greater Judgment...........................16

H.    The Range of Reasonableness of the Settlement in Light of the Best
      Possible Recovery and All Attendant Litigation Risks.........................................16

I.    Arm's-Length Negotiations...................................................................................17

II.   CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF
      FINAL APPROVAL IS APPROPRIATE ...........................................................17

A.    The Requirements of Rule 23(a) are Satisfied......................................................18

1.    The Class is Sufficiently Numerous......................................................................18

2.    Common Questions of Law or Fact Exist.............................................................18

3.    Plaintiff's Claims are Typical of Those of the Class............................................19

4.    Plaintiff is More Than an Adequate Representative of the Class..........................19

B.    The Requirements of Rule 23(b)(3) are Also Satisfied........................................20

1.    Common Legal and Factual Questions Predominate in This Action.....................20

2.    A Class Action is the Superior Means to Adjudicate Plaintiff's Claims...............20

III.  CLASS COUNSEL SHOULD BE PAID THE REQUESTED FEE
      AND   REIMBURSEMENT OF EXPENSES TO WHICH DEFENDANT
      RCN HAS AGREED...........................................................................................21

A.    The Requested Amount That RCN Has Agreed To Pay Was Negotiated
      Only After The Settlement Terms Were Agree Upon............................................21

B.    The Negotiated Fee Amount To Be Paid To Class Counsel For Its
      Efforts Is Reasonable...........................................................................................21

1.    The Complexity, Magnitude and Risks of the Action and the Contingent
      Nature of the Fee..................................................................................................22

C.    The Requested Multiplier Of 0.98 Is Reasonable.................................................23

D.    The Result Achieved and the Quality of Representation.......................................24

IV.     THE COURT SHOULD GRANT APPROVAL OF RCN'S PAYMENT
        OF CLASS COUNSEL'S EXPENSES...............................................................24

V.      THE COURT SHOULD GRANT APPROVAL OF THE INCENTIVE
        AWARD OF $3,000 TO CLASS REPRESENTATIVE CHIN..........................25

CONCLUSION......................................................................................................25

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page**

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
        211 F.R.D. 457 (S.D. Fla. 2002).....................................................10, 11

*Amchem Products Inc v. Windsor*
        521 U.S. 591(1997)..........................................................................20

*Backman v. Polaroid Corp.*,
        910 F.2d 10 (1st Cir. 1990)..............................................................23

*Banyai v. Mazur,* 00-cv-9806 SHS,
        2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007)................................13,14

*Behrens v. Wometco Enters. Inc.*,
        118 F.R.D. 534 (S.D. Fla. 1988).........................................................24

*Bowling v. Pfizer, Inc.*,
        922 F. Supp. 1261 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996)...................22

*Chatelain v. Prudential-Bache Sec.*,
        805 F. Supp. 209 (S.D.N.Y. 1992)........................................................14

*Chin v. RCN Corp.*, 08 Civ. 7349 RJS,
        2010 U.S. Dist. LEXIS 31302 (S.D.N.Y. Mar. 29, 2010)...............................15,17

*Chin v. RCN Corp.*, 08 Civ. 7349 (RJS)(KNF)
        2010 U.S. Dist. LEXIS 31272 (S.D.N.Y. Mar. 12, 2010) (Fox, J.).................17,24

*Comcast  Corp v. Federal Communications Commission*, No. 08-1291,
        2010 U.S. App. LEXIS 7039 (D.C. Cir. April 6, 2010)....................................2

*In re Continental Ill, Sec. Litig.*,
        962 F.2d 566(7th Cir. 1992)..............................................................21

*DeBoer v. Mellon Mortgage Co.*,
    64 F.3d 1171 (8th Cir. 1995), cert. denied, 517 U.S. 1156 (1996)......................21

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................8

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992)..............................................................................19

*D.S. v. New York City Dep't of Education*,
    255 F.R.D. 59 (E.D.N.Y. 2008).....................................................................8,13

*Fink v. Time Warner Cable*, 08-cv-09628 LTS,
    2009 U.S. Dist. LEXIS 63708 (S.D.N.Y. July 23, 2009)....................................14

*Foti v. NCO Fin. Sys.*, 04-cv-00707 RJS,
    2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008) (Sullivan, J.).....7,9,22,25

*Fresco v. Auto Data Direct, Inc.*,
    03-cv-61063, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. 2007)............................11

*In re General Publ. Utils Sec. Litig.*,
    1983 U.S. Dist. LEXIS 11641 (D.N.. Nov. 16, 1983)..........................................9

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992)........................................................................7

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................21

*Hillis v. Equifax Consumer Servs.*, 04-cv-3400 TCB,
    2007 U.S. Dist. LEXIS 48278 (N.D. Ga. 2007)..................................................11

*In re Interpublic Secs.*, 03-cv-1194 DLC,
    2004 U.S. Dist. LEXIS 21429(SDNY 2004).......................................................23

*In re Ivan F. Boesky Sec.*,
    1991 U.S. App. LEXIS 26687 (2d Cir. 1991)......................................................10

*Jermyn v. Best Buy Stores, L.P.*,
    256 F.R.D. 418 (S.D.N.Y. 2009).......................................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)..................................11

*Lyons v. Coxcom, Inc.*, 08-cv-2047-H,
    2009 U.S. Dist. LEXIS 122849 (S.D. Cal. Feb. 6, 2009)....................................14

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006).........................................................................21

*In re Medical X-Ray Film Antitrust Litig.,* 93-cv-5904,
    1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998).....................................15

*Newman v. RCN Telecom Servs., Inc.*,
    238 F.R.D. 57 (S.D.N.Y. 2006)...........................................................................15

*In re Painewebber Ltd. Pshps. Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997).................................................................13,15,16

*People United for Children, Inc. v. City of New York*, 99-cv-648,
    2007 U.S. Dist. LEXIS 15425 (S.D.N.Y. 2007)..................................................11

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997).......................................................................22

*Robidoux v. Celani*
    987 F.2d 931(2nd Cir.1993)...............................................................................19

*In re SmithKline Beckman*,
    751 F. Supp. 525 (E.D. Pa. 1990)........................................................................24

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)...................................................................................9

*In re Union Carbide Corp. Consumer Prods. Business Sec. Litigation*,
    724 F.Supp. 160 (S.D.N.Y.1989).........................................................................23

*In re Warner Communications Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).............................................................7,16,23

## **Other**

Fed. R. Civ. P. 23.......................................................................................... 7,18

Pursuant to Federal Civil Procedure Rule 23(e), Rule 54(d)(2), and the Court's Order dated May 3, 2010,   Plaintiff Sabrina Chin ("Plaintiff") respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Final Approval of the Class Settlement ("Settlement"); for payment of attorneys' fees and reimbursement of expenses to Reese Richman LLP, court appointed class counsel in this matter ("Class Counsel"); for  payment of an incentive award to Plaintiff for her efforts as the class representative; and, in Response to any Objectors to the Settlement.

## PRELIMINARY STATEMENT

The Settlement is an excellent resolution of a highly complex case that has significant benefit for consumers and the public-at-large.  The Settlement guarantees that RCN customers will receive the high-speed, uncapped, Internet service that defendant RCN Corporation ("Defendant" or "RCN") promised, but, as alleged in Plaintiff's complaint, failed to deliver to all consumers due to RCN's peer-to-peer ("P2P") network management practices.  The Settlement also achieves the goal of guaranteeing that all Internet protocols are treated equally by RCN – a concept known as "net neutrality" that the Federal Communications Commission ("FCC") and others have identified as vital for consumers, as well as the United States economy as a whole.  As stated by FCC Chairman Julius Genachowski:

> Why has the Internet proved to be such a powerful engine for creativity, innovation, and economic growth? A big part of the answer traces back to one key decision by the Internet's original architects: to make the Internet an open system…Today the free and open Internet faces emerging and substantial challenges. We've already seen some clear examples of deviations from the Internet's historic openness. We have witnessed certain broadband providers…implement technical measures that degrade the performance of peer-to-peer software distributing lawful content…. The rise of [these] serious challenges to the free and open Internet puts us at a crossroads. We could see the Internet's doors shut to entrepreneurs, the spirit of innovation stifled, a full and free flow of information compromised.

1

(Declaration of Michael R. Reese in Support of Motion for Final Approval ("Reese Decl.") Ex. A (September 21, 2009 speech by FCC Chairman Genachowski)).[1]   Accordingly, the Settlement achieved here by Class Counsel is significant for both average consumers, who will now receive the service promised by RCN, as well as more technically sophisticated users who invent and explore new applications on the Internet to further advance the development of human knowledge and innovation.

Furthermore, the Settlement was crafted at arm's length by experienced counsel on both sides over the course of several months, including a mediation session before Your Honor that involved experts from both parties.   The Settlement provides guaranteed, immediate relief for the Class, while eliminating the many risks and delays associated with continued litigation.   The Settlement should now be granted final approval.

In addition, Class Counsel respectfully request approval of the amount of fees and expenses Defendant has negotiated - an agreement that did not occur until after the Settlement benefit for class members was reached[2] - as fair and reasonable in light of the result achieved, the effort expended to achieve the result, the complexity of this action and the considerable risks undertaken in pursuing this matter on a contingency fee basis.   To date, Class Counsel has invested more than 800 hours of attorney time for a lodestar of more than $520,000 and advanced more than $20,000 in out-of-pocket expenses, all without having been paid a single dollar to date.

---

[1] The FCC has stated that a "net neutral" Internet is important to consumers in that it allows for consumers to use P2P and similar protocols to exchange data regarding such topics as health-care, education, and public safety. (Reese Decl. Ex. A).

[2] The Settlement was filed on July 31, 2009.  The fee was not agreed to until several months later, and only after the involvement of the Hon. Magistrate Kevin N. Fox who conducted a mediation between the Parties on the fee issue on September 21, 2009.

The Settlement, which was achieved despite significant risks, is an outstanding result as it requires RCN to provide the uncapped, high-speed Internet service that it promised consumers, but, as alleged in the Complaint, did not deliver to all consumers due to RCN's P2P network management practices.  Further, this outstanding result was achieved solely through Class Counsel's own efforts and without the benefit of any governmental action or assistance.[3] Plaintiff and Class Counsel now respectfully request that this Court issue an Order granting final approval of the Settlement and awarding Class Counsel their fees and expenses sought here.

## STATEMENT OF FACTS

### 1.    Pre-Suit Investigation, Allegations of the Complaint and Discovery

Plaintiff's class action complaint ("Complaint") was filed on August 19, 2008. The Complaint asserts that RCN misrepresented the quality of the broadband Internet service it provided to subscribers due to RCN's inadequately disclosed P2P network management practices. The Complaint asserts causes of action for violation of the Computer Abuse and Fraud Act, 18 U.S.C. § 1030 *et seq.*; Virginia's Consumer Protection Act, Va. Code § 59.1, *et seq.*; as well as violation of various common law claims.

Given the novel nature of the action, Class Counsel spent several months of pre-suit discovery before filing the Complaint.  (Reese Decl. ¶ 4, Ex. J).  Class Counsel's investigation included, but was not limited to, research into RCN's network management practices and the manner in which it interfered with P2P transmissions; research into RCN's

---

[3] The FCC has attempted to impose net neutrality rules on Internet Service Providers ("ISPs") such as RCN, but has been thwarted in its attempt to do so. *See Comcast Corp v. Federal Communications Commission*, No. 08-1291, 2010 U.S. App. LEXIS 7039 (D.C. Cir. April 6, 2010) (stating that FCC does not have authority to prevent ISPs from interfering with consumers' use of P2P protocols).  This settlement achieves what the FCC has not.

marketing and advertising of its high-speed Internet service; review of RCN's public filings, including filings with the Securities Exchange Commission; research regarding customer complaints; legal research of applicable law including, but not limited to, the Computer Fraud and Abuse Act and Virginia's statutory consumer protection laws.

As part of its litigation of this matter, Class Counsel retained the leading expert in the field: Peter Eckersley of the Electronic Frontier Foundation. (Reese Decl. ¶¶ 5, 29). Mr. Eckersley consulted with Plaintiff and Class Counsel throughout the litigation. (*Id.*). Mr. Eckersley also appeared in Court before Judge Sullivan on May 14, 2009 in order to answer technical questions regarding the action and otherwise provide assistance. (*Id.*). Class Counsel also retained Professor Theodore Grossman of Babson College as a consultant. (Reese Decl. ¶¶ 6, 29) Professor Grossman teaches information technology, as well as other highly technological subjects, and assisted Plaintiff and Class Counsel in litigating the matter.

After service of the Complaint on Defendant, the Parties engaged in discovery. (Reese Decl. ¶ 7). Each Party served discovery requests - document requests and interrogatories - and each side responded to those discovery requests. (*Id.*). Class Counsel reviewed the documents and interrogatory responses produced by Defendant. (*Id.*). Class Counsel also continued its investigation of Defendant, focusing on packet loss data it has received after the filing of the initial complaint and drafted an amended complaint to reflect such information uncovered by Class Counsel. (*Id.*) Class Counsel also investigated the role of the Sandvine Corporation of Ontario, Canada regarding the facts alleged in the Complaint. Class Counsel also cross-examined Defendant's in-house technical specialists regarding Defendant's network management practices at issue in the litigation. Defendant also cross-examined Class Counsel's expert Peter Eckersley. (*Id.*)

4

**2.      Arm's Length Negotiation of the Settlement Terms and Preliminary Approval of the Settlement**

The Settlement was reached through arm's length negotiations by fully qualified counsel and only reached after involvement of the Court that mediated the Settlement.

After service of the Complaint, Defendant approached Plaintiff about the possibility of settlement.  The possibility of settlement was discussed with the Court at a case management conference on January 8, 2009. (Dkt. 13).  As part of the settlement negotiations, and as a result of the above-captioned litigation, RCN agreed to stop its adverse P2P network management practices as of May 1, 2009, even though a settlement had not been finalized as of that date.  (Reese Decl. ¶ 9).   The Parties discussed with the Court the prospect of RCN stopping its P2P network management practices prior to finalization of the settlement, and Class Counsel agreed that RCN should stop its adverse P2P network management practices prior to finalization of the settlement because the sooner RCN discontinued its P2P network management practices, the better it was for consumers.   (*Id.*) RCN would not have stopped its adverse P2P network management practices but for the litigation and on-going settlement negotiations.  (*Id.*)

On May 14, 2009, the Parties, Plaintiff's expert Peter Eckersley, and the Parties' respective counsel met before the Hon. Richard J. Sullivan for a mediation. (Reese Decl. ¶¶ 5, 10). On June 19, 2009, after further discovery and settlement negotiations between the Parties, the Parties agreed to a settlement term sheet that is incorporated in the Settlement Agreement presented here.  (Reese Decl. ¶ 11).

On July 31, 2009, Plaintiff filed a Motion for Preliminary Approval (Dkt. 29). On October 22, 2009, Magistrate Fox held a hearing on the Motion for Preliminary Approval (Dkt. 34).  On March 12, 2010, Magistrate Fox issued a Report and Recommendation that the

Motion for Preliminary Approval be granted (Dkt. 38). On March 29, 2010, this Court granted the Motion for Preliminary Approval and ordered that notice of the proposed settlement be distributed to class members (Dkt. 40) ("March 29th Order").

3.    **Terms of the Settlement**

Pursuant to the Settlement entered into by the Parties, Defendant agrees to the following: (1) cease and desist use of all Network Management Practices that target P2P use for a period of eighteen months starting on May 1, 2009 - *i.e.,* the date that RCN stopped using P2P targeted network management practices as a result of this lawsuit; (2) not engage in any Non-P2P Network Management Practices for a period of eighteen months starting on April 1, 2008 - *i.e.,* the date from which RCN affirms it has not engaged in any Non-P2P congestion Network Management Practices; (3) periodically provide Class Counsel with a written certification from an appropriate RCN officer or executive stating that RCN has complied with the injunctive relief stated above; (4) subject itself to and pay for an independent monitor to assure compliance with the injunctive relief; (5) give consumers advanced notice of any congestion network management practices after the end of the Non-P2P congestion Network Management Practices Injunctive Period and allow consumers to leave RCN without penalty; and (6) pay for the cost of notice.  (Dkt. 31-2, Settlement Agreement at ¶¶ 3.1-3.6, 8.1).

4.    **Procedural History of Arm's Length Fee Negotiations**

Plaintiff and Defendant have negotiated an amount of $540,000 that, with Court approval, should be paid Class Counsel for its time and expenses expended in this matter. This negotiation did not occur ***until after*** the Parties had agreed to the benefit to be received by the Class that is stated in the Settlement Agreement filed with this Court on July 31, 2009. (Reese Decl. ¶¶ 22-23).  The Settlement Agreement itself states that the Parties could not

agree as to an amount to be paid to Class Counsel for its time and expenses. (Settlement Agreement at ¶7.1).

On September 21, 2009, Magistrate Fox conducted a mediation between the Parties in an attempt to reach agreement on the amount to be paid to Class Counsel for its time and expenses. (Dkt. 32). In December, 2009, the Parties reached agreement on $520,000 to be paid to Class Counsel for their time and $20,000 for their expenses (for a total of $540,000) that Defendant agrees not to oppose. The Parties moved to amend the Settlement Agreement to reflect the negotiated fee and expenses amount, which this Court granted in its March 29th Order.

### 5. <u>Proper Notice Provided to the Class</u>

In its March 29th Order, the Court directed that notice be disseminated. Pursuant to the Court's Order, RCN directly sent 446,657 copies of the Notice by either U.S. mail or email to Class Members, as well as posted notice of RCN's website. (Certification of Paul Eskildsen regarding Distribution of Class Notice, Reese Decl. Ex. G, H). Pursuant to the Class Action Fairness Act, notice also was sent to United States Attorney General and the Attorney Generals for the various states in which RCN does business. (Reese Decl. Ex. I).

### <u>ARGUMENT</u>

### I. THE STANDARD FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT UNDER FEDERAL CIVIL PROCEDURE RULE 23

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any class action settlement. F. R. Civ. P. 23(e). The Court's inquiry is not to be a trial on the merits, but rather is to focus on whether the settlement is "fair, reasonable and adequate and not the product of collusion." *Foti v. NCO Fin. Sys.*, 04-cv-00707 RJS, 2008 U.S. Dist. LEXIS 16511, *13 (S.D.N.Y. Feb. 20, 2008) (Sullivan, J.) (approving injunctive relief class

action settlement); *see also In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985) ("to withstand judicial scrutiny, the settlement need only be fair, reasonable and adequate"). Moreover, "the law favors settlements of class actions no less than of other causes." *In re Gulf Oil/Cities Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992).

The factors to be considered in reviewing the Settlement are as follows:

1. the complexity, expense and likely duration of the litigation;

2. the reaction of the class to the settlement;

3. the stage of the proceedings and the amount of discovery completed;

4. the risks of establishing liability;

5. the risks of establishing damages;

6. the risks of maintaining the class action through the trial;

7. the ability of the defendant to withstand a greater judgment;

8. the range of reasonableness of the settlement in light of the best possible recovery; and

9. the range of reasonableness of the settlement recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Finally, "[i]t is well settled that in the judicial consideration of proposed settlements, the [trial] judge does not try out or attempt to decide the merits of the controversy". *Grinnell,* 95 F.2d at 456.

Here, as seen below, the proposed settlement meets all applicable standards of being fair, reasonable and adequate and should therefore be granted final approval.

**A.** **The Complexity, Expense, and Likely Duration of the Litigation**

Should the Settlement not be approved, further litigation would result over class certification, anticipated summary judgment motions, anticipated expert testimony, and trial. Any decisions reached on these issues would probably lead to an appeal. While the

continuation of the litigation in this matter would not likely result in an increased benefit to the Class, it would lead to a substantial expenditure in costs by both Parties. This is so for two significant reasons.

First, should this matter proceed and Plaintiff prevail at a trial, Defendant will likely appeal to the Second Circuit resulting in further burden, expense, and delay to the parties.

Second, the chief aim of Plaintiff's action was to enjoin Defendant from engaging in P2P Network Management Practices that adversely affect RCN subscribers. The Settlement achieves this significant goal.  As of May 1, 2009, Defendant has stopped engaging in P2P Network Management Practices that adversely affect RCN subscribers. Additionally, Plaintiff's action has resulted in Defendant agreeing to subject itself to, and pay for, an Independent Monitor to assure compliance with this significant injunctive relief. The Class is unlikely to receive any additional injunctive relief after a full trial which will exceed the benefits provided for in the Settlement. *See e.g., Foti* 2008 U.S. Dist. LEXIS 16511 at *12 (approving class settlement based upon injunctive relief).

**B.    Reaction of the Class to the Settlement**

Out of a class of more than 440,000 persons, only six objections (four of whom are represented by the same law firm) have been received, representing an infinitesimal fraction of the class.[4]  In other words, no less than 99.99% of the class have expressed no objection to the Settlement.  *See e.g. In re General Publ. Utils Sec. Litig.*, case no. 79-1420, 1983 U.S. Dist. LEXIS 11641, at *22 (D.N.J. Nov. 16, 1983) ("The lack of objection from the members of the class is one of the most important reasons leading the court to the conclusion that the settlement should be approved"); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir.

---

[4] 44 persons have requested exclusion from the settlement.  (Reese Decl. Ex. B).

1990) ("only" 29 objections out of a 281 member class "strongly favors settlement"). Moreover, review of the objections show that they are without merit and should be rejected.

> **1.      The Objectors Represented by The Nolan Law Firm Have Failed to Allege Standing and Their Objections Lack Merit**

The Nolan Law Firm represents four objectors to the settlement, Seth Berkowitz, Christopher Manice, John Wesley Spears III and Wendi Weinman.  (Reese Decl. Ex. C (May 20, 2010 objection letter from William Nolan to Hon. Richard J. Sullivan)).  Significantly, these objections submitted by the Nolan Law Firm *fail to claim that any of these persons are either subscribers to RCN's Internet service or that they were injured in any way by RCN's conduct*.[5]  This failure is fatal to their objection, and, accordingly, on this ground alone, their objections must be rejected.  *See e.g. Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 474 (S.D. Fla. 2002) ("The Objector…also lack standing to appear in this case under Article III of the Constitution….The Supreme Court has held that to have standing under Article III, a plaintiff must show that…it has suffered an "injury in fact") *citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)*; see also In re Ivan F. Boesky Sec. Litig*., case no. 91-cv-7433, 1991 U.S. App. LEXIS 26687, at *27-31 (2d Cir. 1991) (discussing lack of standing to object and stating: "[t]he result has been that Objectors, constituting about two percent of their own class and an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal. Counsel contemplating similar actions in the future should be aware of Rule 11").

Moreover, even if their objections were considered, which they should not given they

---

[5] The Notice distributed pursuant to the Court May 29th Order required that any objector state that they were a subscriber to RCN during the Class Period.  These objectors have failed to comply with that requirement.

do not have standing, review of their objections reflects that they are without merit. Specifically, each of these persons objects claiming that "individual members of the settlement class receive nothing." *Id.* This is completely untrue. The settlement provides real value in that it stops RCN from engaging in the practices that adversely affect consumers. Their objection completely ignores this valuable relief that the injunctive relief provides that has stopped RCN from engaging in the conduct at issue, and which is similar to injunctive relief settlements approved in other class actions. *See e.g. Foti* 2008 U.S. Dist. LEXIS 16511 at *12 (approving class settlement based upon injunctive relief); *Hillis v. Equifax Consumer Servs.,* 04-cv-3400 TCB, 2007 U.S. Dist. LEXIS 48278 , *13 (N.D. Ga. 2007) (granting final approval to settlement that provides injunctive relief stating that "[t]he proposed injunctive relief is multi-faceted and comprehensive"); *Fresco v. Auto Data Direct, Inc.,* 03-cv-61063, 2007 U.S. Dist. LEXIS 37863, *17 (S.D. Fla. 2007)  ("The substantial injunctive relief that will be provided under the proposed settlement also favors...approval"); *People United for Children, Inc. v. City of New York,* 99-cv-648, 2007 U.S. Dist. LEXIS 15425, *11 (S.D.N.Y. 2007) (overruling objectors and granting final approval of settlement based upon injunctive relief). Accordingly, these objections should be overruled.

## 2.    Objector Lyon Has Failed to Allege Standing and His Objections Lack Merit

Mark Lyon, an attorney with a history of raising objection to class action settlements,[6] also has objected to the settlement in the above-captioned action.[7]   Like the objectors represented by the Nolan Law Firm, Objector Lyon has failed to allege that he was injured by any conduct of RCN.  Tellingly, he did not become a subscriber of RCN until

---

[6] Lyon raised issue to the class settlement in *In re Sony BMG CD Tech. Litig.*, 05-cv-09575 NRB (S.D.N.Y.).  The settlement was approved in that matter and Lyon withdrew his pleading from that matter.

several months after this lawsuit was filed in August 2008 that resulted in RCN stopping the conduct at issue.  Accordingly, Objector Lyon has benefited from the settlement and he lacks standing to object.  *Ass'n for Disabled Americans*, 211 F.R.D. at 474.

Objector Lyon also claims that "by the time the settlement can be approved, [the injunctive relief] periods will have expired…and RCN Corporation will be free to continue advertising and marketing their [sic] service in a manner that misrepresents the service they [sic] actually provide."  (Lyon Objection at 4).  This is completely untrue.  The Settlement can be approved before the injunctive relief expires.  Moreover, the Settlement and this litigation have already achieved at least a year's worth of injunctive relief, as RCN has stopped its practice as of May 1, 2009 as a result of this action.  Finally, there is nothing in the Settlement preventing Objector Lyon, Class representative Chin, or any other RCN subscriber from filing suit against RCN in the future if RCN engages in future misconduct.

Finally, Objector Lyon claims that "Class Counsel have signaled their intention to pocket grossly excessive fees for their secret work procuring a settlement designed primarily to absolve defendant of future liability."  (Lyon Objection at 21).  This statement is completely baseless.  There has been no "secret work" and the settlement is not designed to "absolve defendant of future liability." As this Court is well aware, Class Counsel have acted with complete transparency, including, but not limited to, providing their expert to the Court in case it had any questions regarding the proposed settlement.  Likewise, as explained below in more detail, the fees are more than justified, being the result of a mediation conducted by Magistrate Fox, and based on market rates and contemporaneous time records.  Accordingly, Objector Lyon's objections should be overruled as well.

---

[7] Objector Lyon's objection has been entered as part of the record at Docket entry #41.

### 3.    Objector Thomas Lavery Has Failed to Allege Standing and His Objections Lack Merit

Thomas Lavery, another attorney, has also objected to the settlement. (Reese Decl. Ex. D). Objector Lavery, however, ***has failed to state that he ever was a subscriber to RCN's Internet service***.  Accordingly, he lacks standing to object.  For this reason alone, this objection must be rejected.  *Ass'n for Disabled Americans*, 211 F.R.D. at 474.

Moreover, even if Lavery's objection was considered, it must be rejected because it is baseless.  Specifically, Objector Lavery claims that "[t]he story behind this case involves inherent conflicts of interest, the appearance of collusion and class counsel with ties to disgraced law firms."[8]  This is patently false.  As stated above, Class Counsel has operated with complete transparency, including making its expert and client available for the Court at the settlement conference conducted by Judge Sullivan.

Objector Lavery also claims that "[t]he value of the relief is zero because Defendant RCN has already voluntarily changed their practices prior to approval of the class settlement." (Lavery Objection at 7).  This too is patently false.  RCN did not voluntarily change its practices; rather, it changed its practices because of this litigation and settlement. (Reese Decl.  ¶ 9).  And as discussed above, this litigation and settlement has achieved a significant result that other entities such as the FCC have failed to accomplish.[9]

---

[8] Objector Lavery has issue with the fact that almost four years ago, Class Counsel Michael Reese was a partner at Milberg Weiss LLP.  It is true that Mr. Reese was a partner at Milberg (where he won several cases on behalf of consumers and investors), and before that a prosecutor at the Manhattan District Attorney's Office.  However, as Objector Lavery concedes his "objection is not implicating Class Counsel is [sic] any wrongdoing and certainly not in any involvement in the federal crimes of Melvyn Weiss..."  Nor could he, as such an implication would be baseless slander.

[9] Objector Lavery, after discussion with Objector Lyon, claims that he wants Class Counsel replaced by Objector Lyon. While this should be rejected because their objections are without merit, it should be noted that while "Mr. Lyon lives in New York [and] he is an

13

### C.    Stage of the Proceedings and the Amount of Discovery Completed

"The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Painewebber Ltd. Pshps. Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Here, Class Counsel have had the opportunity to conduct, and have conducted, discovery relating to the claims alleged in the Complaint, including propounding discovery requests and interrogatories, and questioning RCN technical specialists about the network management practices at issue here. Additionally, Class Counsel retained a highly regarded and experienced expert in the field - Peter Eckersley (the person who first discovered the type of adverse network management practices at issue here) - who worked closely with Plaintiff's Counsel in investigating and developing the litigation.  Class Counsel also consulted with Professor Theodore Grossman and relied upon his expertise in litigating this matter. Therefore, in light of said investigation and discovery, Class Counsel "has had sufficient information to act intelligently on behalf of the class," which weighs in favor of approval of the Settlement. *D.S. v. New York City Dep't of Education*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008).

### D.    The Risks of Establishing Liability

"If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur,* 00-cv-9806 SHS, 2007 U.S. Dist. LEXIS 22342, *29 (S.D.N.Y. Mar. 27, 2007). In the absence of the Settlement being approved, substantial exposure would exist for both Parties in litigating this case at trial. In fact, similar

---

attorney" (Lavery Objection at 8), it appears that Objector Lyon is not licensed to practice in New York, even though he has resided and practiced in New York since approximately

actions that asserted similar claims based upon similar alleged misconduct have been dismissed even before reaching trial. *See Fink v. Time Warner Cable*, 08-cv-09628 LTS, 2009 U.S. Dist. LEXIS 63708, *14 (S.D.N.Y. July 23, 2009) (dismissing complaint based upon P2P network management practices); *Lyons v. Coxcom, Inc.*, 08-cv-2047-H, 2009 U.S. Dist. LEXIS 122849, *40 (S.D. Cal. Feb. 6, 2009) (same).

      **E.**      **The Risks of Establishing Damages**

      As stated above, the goal of this action was injunctive relief - *i.e.*, guarantee that consumers received uncapped ability to use the Internet.  That goal was achieved here.

      **F.**      **Risks of Maintaining the Class Action Through the Trial**

      Plaintiff submits that this action is properly maintained as a class action as the numerosity, commonality, typicality and adequacy of representation requirements under Federal Civil Procedure Rule 23(a) are met. Here, the Parties stipulated to class certification for settlement purposes.  However, if the class action were to be litigated as a result of the Settlement not being approved, it is likely that Defendant would oppose certification. *See In re Medical X-Ray Film Antitrust Litig.*, 93-cv-5904, 1998 U.S. Dist. LEXIS 14888, *14 (E.D.N.Y. Aug. 7, 1998) (possibility that defendants would challenge maintenance of class in absence of settlement was considered risk to the class and potential recovery). In fact, when challenged previously in another matter regarding the quality of its Internet service, RCN successfully defeated a motion for class certification. *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006).

      Accordingly, the complexity, expense, and duration of the litigation as described above are other factors weighing in favor of approving the Settlement.

---

August of 2008.  (Reese Decl. ¶32, Ex. F).   15

**G.**     **The Ability of the Defendant to Withstand a Greater Judgment**

The ability of the defendant to pay a judgment greater than the amount offered in a settlement can be relevant to the Court's determination of the Settlement's fairness. *Painewebber*, 171 F.R.D. at 129. Here, the Settlement is injunctive in nature and achieves the goal of Plaintiff's action -- to enjoin Defendant from engaging in practices that adversely affect RCN subscribers' ability to use the Internet.  Accordingly, the ability of Defendant to withstand a greater judgment is not a factor here.

**H.**     **The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Litigation Risks**

Fundamental to analyzing a settlement's fairness is the need to compare the terms of the compromise with the likely rewards of litigation. This determination is not susceptible to a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness. The adequacy of the settlement offered must be judged not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiff's case. However, as noted above, it is not necessary in making this determination for the Court to try the case which is before it for settlement, since such a procedure would undermine the very purpose for which settlements are made. Rather, the Court is called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable. *Painewebber,* 171 F.R.D. at 130.

Here, taking into account the risks and benefits outlined above, the proposed settlement falls within this "range of reasonableness."   Accordingly, Class Counsel has achieved the best possible recovery considering the merits of the proposed Settlement

weighed against the cost and risks of further litigation.

### I.        Arm's Length Negotiations

This Settlement was reached through arm's length negotiations by fully qualified counsel, and only reached after intervention of the Court. Class Counsel have labored to reach a fair resolution, with the utmost adherence to their ethical obligations to client and members of the Class alike. *Warner,* 618 F. Supp. at 746 ("It is not for this Court to substitute its judgment as to a proper settlement for that of such competent counsel in view of the fairness of the settlement to the class members"). Underscoring this fact is the involvement this Court had in mediating the settlement between the Parties at a settlement conference at which Plaintiff, Class Counsel, Plaintiff's expert, RCN and its counsel and technicians participated.  Furthermore, no attorneys fees or expenses to be paid to Class Counsel were negotiated until after the terms of the Settlement had been agreed to that were filed with the Court on July 31, 2009, and then, no agreement on fees and expenses were reached until after Magistrate Fox mediated the issue on September 21, 2009.

### II.    CERTIFICATION OF THE PROPOSED CLASS FOR PURPOSES OF FINAL APPROVAL IS APPROPRIATE

This Court has already preliminarily certified the class for settlement purposes. *Chin v. RCN Corporation*, 08-cv-7349 (RJS)(KNF), 2010 U.S. Dist. LEXIS 31302 at *5 (S.D.N.Y. Mar. 29, 2010) (Sullivan, J.); *see also Chin v. RCN Corp.*, 08-cv-7349 (RJS)(KNF) 2010 U.S. Dist. LEXIS 31272 (S.D.N.Y. Mar. 12, 2010) (Fox, J.)("Having reviewed the memorandum of law in support of motion to certify the [RCN] settlement class, and considered supplemental information, provided to the Court, at the preliminary fairness review hearing, the Court finds the Rule 23(a) prerequisites are met. Further, it would be appropriate to certify the settlement class, pursuant to Rule 23(b)(3), and to appoint Chin as

the class representative. In addition, the Court finds the law firm Reese Richman LLP has demonstrated its adequacy to be appointed class counsel, pursuant to Rule 23(g))."

Nothing has changed since the Court granted preliminary certification. Accordingly, for the reasons stated below that also served as the basis for this Court's preliminary certification of the Class, Plaintiff hereby respectfully requests that this Court certify the class for purposes of final approval.

A.     **The Requirements of Rule 23(a) are Satisfied**

Before an action may be certified as a class action, the following requirements of Rule 23(a) must be satisfied:

(a)     the class is so numerous that joinder of all members is impracticable;

(b)     there are questions of law or fact common to the class;

(c)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d)     the representative parties will fairly and adequately protect the interests of the class.

As set forth below, these requirements have been satisfied.

1.     **The Class is Sufficiently Numerous**

Rule 23(a)(1) requires that the plaintiff demonstrate the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, discovery has shown there to be more than 440,000 class members. The threshold for a presumption of impracticality of joinder is therefore easily exceeded.

2.     **Common Questions of Law or Fact Exist**

In order to maintain a class action, there must be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The Second Circuit construes commonality liberally. *See Jermyn v. Best Buy Stores*, *L.P.*, 256 F.R.D. 418, 429 (S.D.N.Y. 2009) ("Rule 23(a)(2)

18

does not require the plaintiff to demonstrate that the class members' claims are identical"). "The commonality requirement may be met where the individual circumstances of class members differ, but their injuries derive from a unitary course of conduct by a single system." *Id.*

Here, the commonality requirement is easily satisfied as RCN made uniform representations during the Class Period as to the quality of its broadband Internet service and used uniform network management practices that are alleged to have contradicted these uniform representations.

### 3.    Plaintiff's Claims are Typical of Those of the Class

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Here, Plaintiff's claims, which arise from the same course of conduct and are predicated on the same legal theories as the claims of all other class members, easily satisfy the typicality requirement of Rule 23(a).

### 4.    Plaintiff is More Than an Adequate
### Representative of the Class

The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). In this case there are no conflicts between Plaintiff and absent class members. Plaintiff is adequate as demonstrated by the fact that she has diligently monitored this action, including the Settlement that is presently before the Court. Underscoring this fact is the Plaintiff's

personal participation in the settlement conference held by this Court on May 14, 2009. Thus, the representative for the Class has clearly shown that she is more than adequate. Furthermore, Class Counsel are experienced class action attorneys who have qualified as lead counsel in other class actions. Plaintiff's counsel have a proven track record in the prosecution of class actions and have successfully litigated many major class action cases.

### B.    The Requirements of Rule 23(b)(3) are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem Products Inc v. Windsor,* 521 U.S. 591, 618 (1997). This case easily meets these requirements.

### 1.    Common Legal and Factual Questions Predominate in This Action

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. In this case, Defendant's alleged liability arises from its representations of material facts regarding the quality of its broadband Internet service. This is the central issue in the case and it predominates over any individual issues.

### 2.    A Class Action is the Superior Means to Adjudicate Plaintiff's Claims

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Id.* at 620. Thus, any manageability problems that may have existed here – and Plaintiff knows of none – are eliminated by the Settlement.

### III. CLASS COUNSEL SHOULD BE PAID THE REQUESTED FEE AND REIMBURSEMENT OF EXPENSES

Defendant RCN has agreed not to oppose payment to Class Counsel of $540,000 for Class Counsel's time and expenses expended in this matter to date. As discussed below, this amount for fees and expenses is reasonable and should be paid to Class Counsel.

#### A. The Requested Amount Was Negotiated With RCN Only After The Settlement Terms Were Agreed Upon

Only after agreement was reached as to the terms of the Settlement benefiting the Class did Class Counsel negotiate with RCN regarding the payments of attorneys' fees and expenses. After extensive arm's length negotiations with the assistance of Magistrate Fox acting in the role as mediator, RCN agreed in December 2009 (more than four months after the Settlement was signed by the Parties and filed with the Court) not to oppose payment of an award of fees and expenses of $540,000. *See McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (involvement of judicial mediator weighs strongly in favor of approval of negotiated fee).

The United States Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward which the parties should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *In re Continental Ill, Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).

Moreover, unlike a typical limited fund case, the fee amount here will not affect the settlement benefit. A decision to reduce or even to refuse to award a fee, while beneficial to Defendant, will not result in any additional benefit to the Class. *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (approving award of attorneys' fees where

21

"[t]he vast majority of the fee will be paid by [the defendant] and will not come out of any class recovery"). Nor does a negotiated fee present the potential for adversity between counsel and the class that the traditional common fund fee may present, because the negotiated fee is being paid in addition to the class benefit. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277-78 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996) (recognizing that divergence of interest can arise in traditional common fund situations). Accordingly, courts at all levels of the judicial system have endorsed such negotiated fee and expense awards.

Here, as discussed below, the negotiated fee and expense amount of $540,000 should be awarded to Class Counsel for their efforts.

**B.    The Negotiated Fee To Be Paid To Class Counsel Is Reasonable**

In cases where the settlement benefit is injunctive relief, as is the case here, courts use a methodology whereby they take Class Counsel's lodestar and then determine whether to increase it by a multiplier (often in the range of 3 to 5 times). The multiplier takes into account certain factors such as the significant risks shouldered by Class Counsel given the contingency nature of attorneys' fees in class actions. *See, e.g., Foti*, 2008 U.S. Dist. LEXIS 16511, at **20-22 (recognizing the lodestar method as preferable in the context of a injunctive relief settlement); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding a 5.5 multiplier).

Here, Class Counsel seek a modest 0.98 multiplier for their efforts. Based upon the risks and other factors discussed below, Class Counsel should now be rewarded the amount of $540,000 for fees and expenses sought here.

**1.    The Complexity, Magnitude and Risks of the Action and the Contingent Nature of the Fee**

The risk of litigation undertaken by Class Counsel was significant in light of the

considerable time and resources that were devoted to this case strictly upon a contingency basis. From the commencement of this litigation, Class Counsel have been paid nothing for their substantial efforts. (Reese Dec. ¶ 25.)

Moreover, in order to litigate this matter, Class Counsel turned down work in other cases, including cases where payment would have been made on an hourly basis at counsel's hourly rates sought here. (Rees Decl. ¶ 3). The significant outlay of cash and personnel resources by Class Counsel has been completely at risk. Payment for their services was wholly dependent on obtaining some benefit for the Class. As discussed above, there was a significant possibility that Class Counsel would recover nothing for their substantial efforts. *See In re Union Carbide*, 724 F. Supp. at 164 ("[C]ontingent fee risk is the single most important factor in awarding a multiplier").

Courts have recognized that the risk of non-payment in complex cases, such as the case at bar, is very real and is heightened when plaintiffs' counsel press to achieve the very best result for those they represent. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where class counsel won a substantial jury verdict, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation).

### C.    The Requested Multiplier of 0.98 Is Reasonable

To date, Class Counsel have expended 875.50 hours, for a lodestar of $529,912.50 based on market rates. (Reese Decl. ¶¶ 3-11 (detailed description of Class Counsel's efforts in matter), Ex. J (Class Counsel' time records in matter), ¶ 27 (review of market rates)). As of the date of the filing of this brief, the multiplier is 0.98, or a little less than 1. This multiplier falls well within the acceptable range awarded by courts within the Second Circuit.

*In re Interpublic Secs.*, 03-cv-1194 DLC, 2004 U.S. Dist. LEXIS 21429, at *12 (SDNY 2004)(noting that "[i]n recent years multipliers of between 3 and 4.5 have been common"). Here, taking into account the significant complexity of the issues, the risks of this litigation and contingent nature of the fee, a multiplier of 0.98 is certainly reasonable.

> ### D.     The Result Achieved and the Quality of Representation.

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988). Here, the goal of the litigation was to enjoin Defendant from engaging in practices that adversely affect RCN subscribers. Class Counsel's efforts in the litigation achieved this significant goal. The substantial experience of Class Counsel in prosecuting consumer protection class action cases achieved this significant goal.[10]

## VI.     THE COURT SHOULD GRANT APPROVAL OF RCN'S PAYMENT OF CLASS COUNSEL'S EXPENSES

The award of costs to counsel who obtain a recovery for the class is appropriate. *See In re SmithKline Beckman,* 751 F. Supp. 525, 534 (E.D. Pa. 1990). As described in the Reese Declaration, the expenses of $20,157.44 incurred were reasonable in achieving the significant result reached in this Action. (Reese Decl. ¶ 29). RCN has agreed to pay up to $20,000 for Class Counsel's expenses. Accordingly, Class Counsel respectfully requests this Court to order that RCN pay Class Counsel $20,000 for reimbursement for their expenses.

---

[10]     As recognized by Magistrate Fox, Class Counsel have a proven track record in the prosecution of class actions, and have successfully litigated many major class action cases. *RCN*, 2010 U.S. Dist. LEXIS 31272 at *7-8 (recommending that Reese Richman LLP be appointed Class Counsel stating that "Reese Richman LLP specializes in consumer fraud class action litigation…. Prior to opening his firm in 2006, Reese spent six years as a partner at a law firm…[where] Reese prosecuted several class actions that resulted in very large settlements.") (*see also* Reese Decl. Ex. L (Reese Richman LLP firm resume)).

## VII.   THE COURT SHOULD GRANT APPROVAL OF THE INCENTIVE AWARD OF $3,000 TO CLASS REPRESENTATIVE CHIN

It is well within the Court's discretion to reward a named plaintiff for her efforts in forwarding the litigation.  *See e.g. Foti*, 2008 U.S. Dist. LEXIS 16511 at * 26 (awarding incentive award of $4,500 to class representatives).   Here, upon this Court's approval, Defendant RCN has agreed to pay the Class Representative Sabrina Chin $3,000 as an incentive award as compensation for her time and effort spent in the litigation.   Ms. Chin has spent considerable time in this litigation, underscored by her appearance at the settlement conference held before Your Honor in May, 2009.  (Reese Decl. Ex. M: Affidavit of Sabrina Chin detailing involvement in matter as class representative).   Accordingly, Plaintiff respectfully requests that the Court approve of the $3,000 incentive award to Class Representative Chin.

### CONCLUSION

For the reasons stated above, the Parties respectfully request that the Court certify the class for purposes of final approval of the settlement; grant final approval of the Settlement; grant Class Counsel's application for payment of $540,000 in fees and expenses; and, grant approval for payment of $3,000 to Plaintiff Chin for her efforts in representing the class.

Respectfully submitted,

**REESE RICHMAN LLP**

Dated:  May 28, 2010                By: */s/ Michael R. Reese*
Michael R. Reese
Kim E. Richman
Belinda L. Williams
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Class*

25