IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sabrina Chin, | ) |
| | ) |
| v. | ) |
| | ) |
| RCN Corporation, | ) Civil Action No. 08 Civ. 7349 (RJS) |
| | ) |
| | ) |

## THOMAS J. LAVERY's OBJECTION TO CLASS ACTION SETTLEMENT

Thomas J. Lavery, by his attorney, Mark T. Lavery, hereby objects to the proposed class action settlement and respectfully requests that this Court deny the motion to approve the proposed class action settlement, and states in support as follows:

The instant case presents a classic example of class action abuse. In this case, the Plaintiff, her lawyers and their retained expert profit handsomely while the class receives no relief in exchange for release of valuable Computer Fraud and Abuse Act (CFAA) damages claims. This type of class action settlement abuse has been roundly criticized and led to the rejection of class action settlements in the past. See *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 880-82 (7th Cir. 2000). This Court in the interests of justice and in order to defend the interests of the class and the propriety of class action litigation should deny the motion to approve the settlement, remove Reese and Richman as class counsel and replace Sandra Chin with objector Mark Lyon as class representative and provide the new class representative time to hire new class counsel.

### Chin v. RCN - A Classic Story of Class Action Abuse

This case presents a tale of why many Americans abhor the class action device. The story behind this case involves inherent conflicts of interest, the appearance of

collusion and class counsel with ties to disgraced law firms. Fortunately, these facts are being brought to light and this Court can prevent class action abuse by disapproving the class settlement and making an order replacing class counsel and the class representative.

This class action was filed on August 19, 2008. The case was filed in the wake of the P2P "throttling" class action litigation against Comcast Corporation. On September 3, 2008, the date the complaint was served upon Defendant, Peter Neger called Michael Reese to discuss settlement. On September 24, 2008, Neger and his associate met with Michael Reese and Kim Richman for an hour and a half to discuss settlement. By December 17, 2008, the parties had in the words of Michael Reese, a former partner at the notorious Milberg Weiss law firm, "traveled far along the path towards settlement." In light of this, Reese asked that the Court waive the requirement to provided a joint proposed case management plan prior to a case management conference scheduled for January 8, 2009.

On January 8, 2009, the parties appeared and informed the Court of progress on settlement. The parties were ordered to provide the Court with a joint status letter by February 27, 2009 but failed to file that letter electronically by that date. On April 7, 2009, the Court ordered that should this matter not be resolved before April 27, 2009, the parties shall submit a joint status letter by April 27, 2009 regarding the progress of their settlement discussions." No letter was filed electronically by April 27, 2009, which in light of this and other facts would lead one to infer that the matter had been resolved between Neger and Reese before, perhaps as early as September 3, 2009.

But prior to conclusion of settlement, Class Counsel needed to take care of another matter. In addition to Reese and Richman, Lee Weiss and Rebecca Tingley of Dreier LLP represented Plaintiff. Lee Weiss, like Reese, was a former Milberg Weiss lawyer. Milberg Weiss folded as a result of the indictment and conviction of Melvyn Weiss and other lawyers from Milberg Weiss for federal crimes. After leaving Milberg Weiss, Lee Weiss ended up at Dreier LLP. Dreier LLP was dissolved as consequence of the fact that its name partner, Marc Dreier was indicted and convicted for federal crimes. Without any noted objection from Reese or Richman, Weiss and Tingley were allowed to withdraw and Dreier LLP asked for and was granted leave to withdraw with the right of Dreier LLP to recover fees and expenses. Thus the creditors of disgraced lawfirm of Dreier LLP seek to benefit monetarily better than the class members in this case. It is unclear what benefit if any was provided to the class by Dreier LLP. The day after the Dreier LLP lawyers were granted leave to withdraw the Joint Motion for Settlement was filed. The timing of these events and the involvement of former lawyers of Milberg Weiss and lawyers from Dreier LLP certainly create an appearance of impropriety, the appearance of possible collusion and inherent conflicts of interest in a no-cash-to-class settlement of this type.

It should be clear. This objection is not implicating Class Counsel is any wrongdoing and certainly not in any involvement in the federal crimes of Melvyn Weiss or Marc Dreier. Rather the background of the lawyers creates an appearance of impropriety in a case in which the lawyers get a windfall profit of over half of a million dollars and the class gets no monetary relief at all.

### The Settlement Terms

The terms of the settlement provide more circumstantial evidence that might lead one to believe that Class Counsel, the Class Representative and Expert Peter Eckersley have an inherent conflict of interest which requires their removal from the case. The class gets no monetary relief. The so-called "injunctive relief" allows Defendant RCN to return to its disputed P2P network throttling practices by the end of this year. Their is no fluid recovery or *cy pres*, even for the Electronic Frontier Foundation, the employer of expert Peter Eckersley, which presumably means Eckersley will personally profit from this deal to supplement his income from the Electronic Frontier Foundation.

On the other hand, Reese and Richman are awarded close to a half million dollars. Reese and Richman were the only lawyers from their firm that appeared in this case. The case has been litigated for less than two years. There was no motion practice with respect to the pleadings, Defendant answered on November 21, 2008. It is unclear what if any true discovery occurred. It seems that the purpose of discovery in this case was designed to facilitate the settlement process which began on the day the Complaint was served.

Essentially, the two lawyers in this case are asking to be paid over half a million dollars for settling a case allegedly worth over $5,000,000 in damages that provides no monetary relief to the class. This does not pass the laugh test. No reasonable client would pay a contingency fee lawyer any money for settling a case worth $5,000,000 in exchange for no money but rather an empty promise from the defendant that it will not damage plaintiff again until just before Thanksgiving of this year.

The features of the settlement clearly demonstrate that no actual relief is offered to the class. First, Defendant does not admit to any liability or wrongdoing. The class would have benefited if Defendant admitted that its practices were wrongful because then the class could bring future action if Defendant RCN enagage in "throttling" P2P practices in the future. But Class Counsel and the Class Representative did not secure such a benefit.

Next, Defendant stopped the disputed practices over a year ago. The Class Notice states that "RCN has agreed to cease and desist all Network Management Practices which specifically affect P2P Internet traffic starting on May 1, 2009. Since RCN stopped engaging in the disputed practices, there is no advantage for class members to provide a release of claims now. Moreover, the settlement allows RCN to reengage in the disputed practices in November, 2010. It is unlikely that RCN would re-engage in these disputed practices if the Class Action Settlement is disapproved. Despite the fact that RCN does not admit wrongdoing or liability, RCN would be taking a grave risk of litigation and liability exposure if it decided to reengage in a contested practice that exposes them to significant liability for damages under the Computer Fraud and Abuse Act. But the language in the settlement agreement crafted by Chin and her lawyers, basically grants Defendant RCN to the right to enagage in the disputed P2P practices starting in November.

Finally, the monetary terms of the settlement reek of conflict of interest. As stated above, Reese and Richman's request for $520,000 in fees is laughable. Sandra Chin, who was a class representative for former Milberg Weiss lawyer Michael Reese in the case of Chin v. Capital Group Companies, Inc., will receive $3,000. The Complaint

suggests that the monthly damages for class members are around $14.95 per month. See Complaint at p. 20. Assuming Chin had RCN service during the entire six year class period, her damages would amount to around $1,100. Thus Chin gains a windfall of nearly $2,000 in a case in which her fellow class members receive nothing. Finally, there is Peter Eckersley. Class Counsel relies on his opinion to support their contention that the settlement is fair and reasonable. It is no surprise that Mr. Eckersley thinks its fair since he may profit up to $20,000 as a result of the settlement. The fact that the expert opining on the fairness of the settlement seeks to profit from the settlement is an inherent conflict that this Court should not ignore.

### Legal Analysis

Class member and objector Mark Lyon presents a wonderful legal analysis of the factors in support of denial of approval of this class action settlement. Objector Lavery joins in his objection.

In addition to caselaw and authority cited by Objector Lyon. Objector Lavery would like to bring to the Court's attention two seminal class action cases from the Seventh Circuit that are applicable to this case. *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 880-82 (7th Cir. 2000) and *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (2002). Both of these cases provide support for rejection of the class action settlement.

The Court should pay particular attention to *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (2002). This case involved refund anticipation loans. In that case, the Seventh Circuit rejected a class action settlement that provided for $25,000,000 in cash compensation. The settlement was rejected on the grounds of conflict of interest, a risk

of collusion and a failure of the District Court judge to carefully to quantify the net expected value of continued litigation to the class.

In this case, the inherent conflicts of interest are obvious. The Court should also investigate any possible collusion if the Class representative and Class Counsel are not removed from this case. Class Counsel's failure to properly analyze or explain the net expected value of the litigation highlights the inherent conflicts of interest and possible collusion in the proposed class action settlement.

Chin and Class Counsel alleged that the value of this case exceeded $5,000,000. The value of the relief is zero because Defendant RCN has already voluntarily changed their practices prior to approval of the class settlement. If Class Counsel claims that there is some value to the settlement term that RCN will continue to refrain from P2P throttling until November 2010, they have not clearly articulated that value. The cash value of the settlement is $543,000. However, all cash goes to the class rep, class counsel and their retained expert. So if we use Class Counsel's valuation of $5,000,000, it would be reasonable to approve the monetary value of the settlement, if the expectation of recovery of the $5,000,000 was 10%. Objector Lavery is unaware of any analysis by Class Counsel articulating that the chance of recovery is 10% or less. Thus there seems to be no evidence to support a settlement worth cash value of $543,000, certainly when the class does not receive any share of it.

If the Court on its own analysis, concluded that there was a 10% chance of recovery then perhaps the Court could approve the settlement, but award $0 in attorney's fees to Class Counsel, award $0 to the Class Representative and award $0 in costs to Peter Eckersley but instead order Class Counsel to distribute the $543,000 to

class members on a pro rata basis. Since Class Counsel and Ms. Chin have a fiduciary duty to the class because they were certified as class counsel on 3/29/2010, this may be an equitable result and should be in the Court's power. Class Counsel overreaches in their request for fees and the Court should have discretion to order Class Counsel and Class Representative to refund the fee award to class members at their expense on a pro rata basis. If the Court finds that Class Counsel and the Class Representative breached their fiduciary duty by overreaching and using the case to enrich themselves with fees then the Court has discretion to disgorge the fees and refund them to the class on a pro rate basis.

This approach may not be superior. The Court also has discretion to remove the class representative and her class counsel. The Court could appoint objector Mark Lyon. Mr. Lyon lives in New York. He is an attorney. He would seem to be an adequate class representative and would have the ability to locate class counsel who could replace Reese and Richman.

Finally, Objector Lavery and his counsel have no previous relationship with Mark Lyon. Objector Lavery experienced problems with RCN Internet service prior to class notice. Mr. Lavery was first made aware of the Chin v. RCN class action case upon receiving class notice. Thomas J. Lavery then hired Mark T. Lavery to object to this class action settlement because it required him to release claims in exchange for no value. There is no option to opt out. The Computer Fraud and Abuse Act requires an aggregation of $5,000 in damages to proceed with a case. Objector Lavery has not suffered $5,000 worth of individual damages. Thus opting opt is not a viable option

because he will lose his claim. This case is only viable as a class action for aggregated damages under the CFFA.

Counsel Lavery learned about Mark Lyon while doing research to prepare the objection. http://arstechnica.com/tech-policy/news/2010/04/just-like-comcast-rcn-accused-of-throttling-p2p.ars. Objector Lavery and Obejctor Lyon do not personally know each other and have never talked. Counsel Lavery had a brief conversation with Obejctor Lyon to discuss his objection. Nevertheless, Objector Lavery would support replacement of Sandra Chin with Mark Lyon as the future class representative in this case, if the Court decides to take that option.

Finally, Objector Lavery also objects on the grounds that Class Notice is improper. The Objection does not explain that an individual with less than $5,000 in damages cannot opt out and bring an individual CFAA claim. The Class Action Notice also does not clearly state the objection deadline in the notice. Objector Lavery suggests that the Court order that Class Notice be resent by electronic mail to class members, informing them of their limited ability to bring claims if they opt out and the new notice should extend the time to object.

Respectfully Submitted,

Thomas J. Lavery

/s/ Mark T. Lavery
By His Attorney

Mark T. Lavery
733 Lee, Suite 150
Des Plaines, IL 60016
847-813-7771

# CERTIFICATE OF SERVICE

**TO:**

Michael R. Reese,
Reese Richman LLP,
875 Avenue of the Americas,
New York, NY 10001

RCN's Counsel
Peter C. Neger,
Bingham McCutchen LLP,
399 Park Avenue, New York, NY 10022.

I, Mark T. Lavery, certify that I caused THOMAS J. LAVERY's OBJECTION TO CLASS ACTION SETTLEMENT, to be served by first class mail by depositing it in the mail before 5:00 p.m. on May 14, 2010 to Michael R. Reese and Peter C. Neger. I also sent an electronic copy to the Court.

/s/ Mark T. Lavery
Mark T. Lavery